UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-21994

FLORIDA FAIR HOUSING
ALLIANCE, INC.,

    Plaintiff,

v.

TOP WELL, LLC *d/b/a* PALM COURT
APARTMENTS AT WELLINGTON,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Florida Fair Housing Alliance, Inc. (the "FFH Alliance" or "Plaintiff") sues Defendant Top Well, LLC *doing business as* Palm Court Apartments at Wellington ("Defendant") for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act.

**INTRODUCTION**

1.    "The [Fair Housing Act] is not an instrument to force housing authorities to reorder their priorities. Rather, the [Fair Housing Act] aims to ensure that those priorities can be achieved without arbitrarily creating discriminatory effects or perpetuating segregation." Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507 at 2522. Due to policies and practices like blanket bans on any applicant with a felony conviction, such as those of Defendant as discussed below, the FFH Alliance has documented thousands housing units in greater South Florida area that are unavailable to individuals with *any* felony conviction from *any* point in time, and to many individuals with a misdemeanor conviction. To combat the perpetuation of segregation and stem the discriminatory impact of needlessly unjust practices, housing providers large and small must evaluate and revise the role that criminal records screening policies and practices play in their application decisions to

ensure that they are serving a substantial, legitimate, non-discriminatory interest and are not a proxy for racial discrimination.

2. The "heartland of disparate-impact suits" under the FHA are those which target "artificial barriers to housing." Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507, 2522. In this vein, as revealed by the investigation conducted by the FFH Alliance, Defendant imposes a blanket prohibition on any person with any conviction record – *no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since*.

3. Due to the documented racial disparity in the criminal legal system, Defendant's below discussed blanket prohibition on applicants with a felony conviction, by extension, disproportionately limits housing opportunities of Hispanic applicants as compared to white applicants, and in so doing, violates in violation of the Fair Housing Act.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

5. Venue in this District is proper because the subject property is located in this district, Plaintiff resides in this district, Defendant transacts business in this district, and the complained conduct of Defendant occurred in this district.

## PARTIES

6. The FFH Alliance is a fair housing advocacy organization and non-profit corporation formed in Florida, and headquartered in Miami-Dade, Florida. The FFH Alliance offers a variety of programs and services designed to advance fair housing in Florida. To advance its mission of ensuring equal access to housing for all, the FFH Alliance engages in education and outreach; provides counseling to individuals facing discrimination; works with local and federal

PAGE | **2** of **9**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

officials to enhance fair housing laws and their enforcement; undertakes investigations to uncover unlawful discrimination; and, when necessary, initiates enforcement actions.

7. Defendant is a Florida limited liability company, with its principal place of business located in Wellington, Florida.

## DEMAND FOR JURY TRIAL

8. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## FACTUAL ALLEGATIONS

9. Approximately *1.5 million* individuals are currently *serving* a sentence of more than one year, *i.e.*, the *repayment* phrase of a felony-level debt to society, under the jurisdiction of state or federal correctional authorities in the United States. With respect to these individuals' demographics, according to the Bureau of Justice Statistics: **30%** are white, **33%** are black, and **25%** are Hispanic.[1] In comparison to the demographics of the United States population (the total of which is estimated at 308 million), however, according to the U.S. Census Bureau: **63%** of the population is white, **13%** of the population is black, **16%** of the population is Hispanic.[2]

10. Despite making up a fractional percentage of the United States population in comparison to whites, Hispanic individuals are **three times more likely** to be convicted *and* incarcerated than that of white individuals.[3] Thus, in simplest terms, a policy, procedure, or practice that arbitrarily denies, without any consideration, housing to individuals with a felony conviction will *absolutely* have a disparate impact on Hispanic individuals.

---

[1] Bureau of Justice Statistics, U.S. Dep't of Justice, *Prisoners in 2017*, 15 (April 2019), *available at* https://www.bjs.gov/content/pub/pdf/p17.pdf.
[2] U.S. Census Bureau, U.S. Dep't of Commerce, *Overview of Race and Hispanic Origin: 2010*, 6 (March 2011), ***available at*** https://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf.
[3] *Supra* at FN. 5.

11. Pursuant to its mission of ensuring equal access to housing for all, the FFH Alliance began investigating the "Palm Court" apartment community, located at 711 Forest Club Drive, Wellington, Florida. 33414 (the "Complex"), for discriminatory housing practices.

12. Defendant is the owner and otherwise landlord of the Complex.

13. On March 13, 2020, the FFH Alliance tested the Complex for unlawful discriminatory housing practices using a field tester.

14. The field tester used by the FFH Alliance to test the Complex ("Field Tester" or "FT") is a *sui juris* Hispanic male with a felony conviction.

15. On March 13, 2020, at approximately 12:58 pm, FT called the Complex at phone number: 561-793-8500. After dialing this number, of which was identified as being a recorded line, FT was promptly connected to an agent of Defendant, an individual whom identified herself as "Melissa," and FT proceeded to ask whether rental property was available. Defendant, by and through this agent, responded without hesitation that properly was available, *namely*, a two-bedroom apartment. FT then asked whether his (FT's) rental application would be denied due to FT's record felony conviction, to which Defendant, by and though Melissa, told FT "yes."

16. Defendant did not perform any investigation or inquiry into the felony conviction had by FT. For example, Defendant did not inquire into the type of felony, the date of conviction, the nature of the conviction, let alone the circumstances surrounding the felony conviction had by FT. Defendant simply identified FT as an individual with a felony conviction, and without any inquiry or investigation, chose to deter FT from renting the property Defendant held open to the public due to FT's record felony conviction.

17. Defendant's response regarding applications submitted by individuals previously convicted of a felony clearly shows that rental property within the Complex is subject to a blanket

PAGE | **4** of **9**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

prohibition of fully rehabilitated individuals with *any* single felony conviction. This is unlawful under the Fair Housing Act, as it has a disparate impact on Hispanic people, and fails to serve a substantial, legitimate, nondiscriminatory interest of Defendant.

18. The actions and statements of Defendant, *inter alai*, the practice and/or policy to automatically deny any prospective individual with a felony criminal record, serves to discourage Black and Hispanic/Latino individuals with a criminal record from applying, inspecting, and renting the Dwelling, and otherwise restrict the choices of these individuals in connection with attempts to seek, negotiation for, and ultimately rent the Dwelling.

19. The harm inflicted by discriminatory criminal records policies, like those of Defendant, is significant, not only in terms of the sheer number of people affected, but also in terms of the consequences for the wellbeing of our communities. In fact, securing safe and affordable housing is a particularly crucial need for individuals reentering their communities immediately after time in prison.

20. Research shows that success in finding adequate housing is critically important to allowing reentrants to secure employment, government benefits, and other community ties. Housing has been characterized, properly, as the "lynchpin that holds the reintegration process together."[4] As another expert put it, "[t]he search for permanent, sustainable housing portends success or failure for the entire reintegration process."[5]

21. Critically, the policy of Defendant to automatically deny any prospective individual with a felony criminal record perpetuates segregated housing patterns and discourages and/or

---

[4] Jeremy Travis, *But They All Come Back: Facing Challenges of Prisoner Reentry* 219 (2005)
[5] Barbara H. Zaitzow, *We've Come a Long Way, Baby...Or Have We? Challenges and Opportunities for Incarcerated Women to Overcome Reentry Barriers* 233 (in Global Perspectives on Re-Entry (2011)).

obstructs choices in the applicable community, neighborhood, and/or development. As such, the actions of Defendant consuetude efforts to deprive Black and Hispanic individuals of housing opportunities.

22. On April 4, 2016, the U.S. Department of Housing and Urban Development ("HUD") issued a document titled "*Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions*" (the "HUD Guidance"). Attached as Exhibit "A" is a copy of the HUD Guidance.

23. The Guidance noted that "criminal history-based restrictions on access to housing are likely disproportionately to burden African Americans and Hispanics." Id. HUD found that "where a policy or practice that restricts access to housing on the basis of criminal background has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider." *See* HUD Guidance.

24. Ultimately, HUD concluded that "**a discriminatory effect resulting from a policy or practice that denies housing to anyone with a prior arrest or any kind of criminal conviction cannot be justified, and therefore such a practice would violate the Fair Housing Act**." Id. (emphasis added).

25. According to recent data, studies, and HUD findings, Hispanic people are arrested, convicted, and imprisoned at vastly disproportionate in country as a whole, of which is consistent within the State of Florida. As such, Defendant's policy actually and predictably results in a disparate impact to Hispanic people.

PAGE | **6** of **9**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

26. Defendant's policy regarding the criminal history of applicants seeking to rent, utilize, or otherwise occupy the Dwelling is unlawful under the Fair Housing Act, as it has a disparate impact on individuals of Hispanic heritage and/or descent, and otherwise fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

27. HUD has found that no substantial, legitimate, nondiscriminatory interest can be served where "[a] housing provider … imposes a blanket prohibition on any person with any conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then." Id.

28. Consistent with FFH Alliance's fair housing testing efforts, FFH Alliance's has a practice of continuing to monitor and test those entities and individuals found to have been engaged in discriminatory housing practices. FFH Alliance's will continue monitoring Defendant, and its agents, in order to determine its (Defendant's) ongoing compliance with the Fair Housing Act.

### *COUNT I.*
### VIOLATION OF THE FAIR HOUSING ACT

29. Plaintiff, the FFH Alliance, incorporates by reference paragraphs 1-28 of this Complaint as though fully stated herein.

30. Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant and the agents of Defendant.

31. Defendant authorized its agents to act for it (Defendant) when Defendant's agents committed the Fair Housing Act violations alleged herein. The agents of Defendant accepted the undertaking of acting on behalf of Defendant when they (Defendant's agents) committed the Fair Housing Act violations alleged herein. Defendant had control over its (Defendant's) agents when said agents committed the Fair Housing Act violations alleged herein.

32. With respect to the matter at hand, Defendant's criminal history policy and/or practice – as identified above – is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law. Further, there is a robust causal link between the above noted policy and/or practice of Defendant and the disparate impact on Hispanic people, as Hispanic individuals are disproportionally more likely to have been convicted of a felony than that of white individuals. As a result, Defendant's practice of automatically, or otherwise without any review or investigation, denying any prospective individual with a felony criminal record has a direct, disproportionate discriminatory effect on Hispanic individuals, as exemplified by the test conducted by Plaintiff.

33. Defendant has violated the Fair Housing Act by, *inter alia*, making unavailable and/or otherwise denying the Dwelling to individuals on the basis of race and/or criminal record.

34. As a result of Defendant's conduct - committed despite being engaged in the business of real estate, coupled with Plaintiff's ongoing monitoring efforts - Plaintiff has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

35. WHEREFORE, Plaintiff FFH Alliance, respectfully, requests that this Court:

   (a)  Declare the above-mentioned actions, omissions, polices, and procedures, of Defendant to be in violation of the Fair Housing Act;

   (b)  Award damages to Plaintiff against Defendant;

   (c)  Enter a permanent injunction enjoining Defendant from discriminating against individuals on the basis of race and/or criminal history;

   (d)  Enter a permanent injunction compelling Defendant to amend its (Defendant's) polices, procedures, and practices, that discriminate against individuals on the basis of race and/or criminal history;

   (e)  Award Plaintiff costs and reasonable attorneys' fees; and

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

  (f) Any other relief that this Court deems appropriate and just under the circumstances.

DATED: May 12, 2020

             Respectfully Submitted,

              /s/ Jibrael S. Hindi
             **JIBRAEL S. HINDI, ESQ.**
             Florida Bar No.: 118259
             E-mail: jibrael@jibraellaw.com
             **THOMAS J. PATTI, ESQ.**
             Florida Bar No.: 118377
             E-mail: tom@jibraellaw.com
             The Law Offices of Jibrael S. Hindi
             110 SE 6th Street, Suite 1744
             Fort Lauderdale, Florida 33301
             Phone: 954-907-1136
             *COUNSEL FOR PLAINTIFF*