UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-CV-21994

FLORIDA FAIR HOUSING ALLIANCE, INC.,

    **Plaintiff**,

v.

TOP WELL, LLC d/b/a PALM COURT
APARTMENTS AT WELLINGTON,

    **Defendant**.

_____/

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Despite making up *less than* **one-third (29%)** of the total U.S. population, Black and Hispanic individuals represent *more than* **half (58%)** of the individuals convicted of any felony. In light of this dystopian reality, the screening practices Defendant directs at individuals it (Defendant) *suspects* to have been convicted of *any felony* has a **disparate impact** on Black and Hispanic individuals. Yet, make no mistake, the Florida Fair Housing Alliance *is not* attempting to hold Defendant accountable for the **disproportionate criminal prosecution unjustly endured by Black and Hispanic individuals**. Rather, in acknowledgment of such undeniable fact, the Florida Fair Housing Alliance brings this action to *eliminate* the below-evidenced screening practice of Defendant because, *although facially neutral*, such practice is an unnecessary, arbitrary, and artificial barrier to housing that disproportionately impacts Black and Hispanic individuals.

As such, Plaintiff Florida Fair Housing Alliance, Inc. (the "FFH Alliance" or "Plaintiff") sues Defendant Top Well, LLC *doing business as* Palm Court Apartments at Wellington ("Defendant"), **under a theory of disparate-impact liability**, for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act.

## INTRODUCTION

1. "The [Fair Housing Act] is not an instrument to force housing authorities to reorder their priorities. Rather, the [Fair Housing Act] aims to ensure that those priorities can be achieved without arbitrarily creating discriminatory effects or perpetuating segregation." Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507 at 2522. Due to policies and practices like blanket bans on any applicant with a felony conviction, or the more nefariously latent practices of Defendant discussed below, the FFH Alliance has documented thousands of housing units in the greater South Florida area that are unavailable to individuals with *any* felony conviction from *any* point in time, and to many individuals with a misdemeanor conviction.

2. To combat the perpetuation of segregation and stem the discriminatory impact of needlessly unjust practices, housing providers large and small must evaluate and revise the role that criminal records screening policies and practices play in their application decisions to ensure that they are serving a substantial, legitimate, non-discriminatory interest and are not a proxy for racial discrimination.

3. As confirmed by FFH Alliance's investigation on March 13, 2020, Defendant has erected arbitrary, unnecessary, and otherwise hidden, barriers to housing that have an unjustifiable disparate impact on Black and Hispanic individuals. In short, the screening practices Defendant directs at individuals it (Defendant) *so much as suspects as have any felony* conviction has a disparate impact on Black and Hispanics individuals because, despite making up less than one-third of the population, Black and Hispanic represent *more than half* of all convicted felons.

4. In the eyes of Defendant, individuals that it (Defendant) *even suspects* to have been convicted of a felony do not deserve *mere consideration* for the housing Defendant claims to be indiscriminately available. It does not matter whether the individual *actually was* a convicted felon,

suspicion alone, or as exemplified below, *mere inquiry into Defendant's handling of convicted felons* is enough.

5. Due to the documented racial disparity in the criminal legal system, Defendant's below discussed prohibition on applicants with a felony conviction, by extension, disproportionately limits the housing opportunities of Hispanic and Black applicants in comparison to White applicants, and in so doing, violates the Fair Housing Act.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

7. Venue in this District is proper because the subject property is located in this district, Plaintiff resides in this district, Defendant transacts business in this district, and the complained conduct of Defendant occurred in this district.

## PARTIES

8. The FFH Alliance is a fair housing advocacy organization and non-profit corporation formed in Florida, and headquartered in Miami-Dade, Florida. The FFH Alliance offers a variety of programs and services designed to advance fair housing in Florida. To advance its mission of ensuring equal access to housing for all, the FFH Alliance engages in education and outreach; provides counseling to individuals facing discrimination; works with local and federal officials to enhance fair housing laws and their enforcement; undertakes investigations to uncover unlawful discrimination; and, when necessary, initiates enforcement actions.

9. Defendant is a Florida corporation, with its principal place of business located in Boca Raton, Florida.

PAGE | **3** of **11**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

## DEMAND FOR JURY TRIAL

10. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## FACTUAL ALLEGATIONS

11. Approximately *1.5 million* individuals are currently *serving* a sentence of more than one year, *i.e.*, the *repayment* phrase of a felony-level debt to society, under the jurisdiction of state or federal correctional authorities in the United States. With respect to these individuals' demographics, according to the Bureau of Justice Statistics: **30%** are white, **33%** are black, and **25%** are Hispanic.[1] In comparison to the demographics of the United States population (the total of which is estimated at 308 million), however, according to the U.S. Census Bureau: **63%** of the population is white, **13%** of the population is black, **16%** of the population is Hispanic.[2]

12. Despite making up a fractional percentage of the United States population in comparison to whites, Hispanic individuals, for example, are **three times more likely** to be convicted *and* incarcerated than that of white individuals.[3] Thus, in simplest terms, a policy, procedure, or practice that arbitrarily denies, without any consideration, housing to individuals with a felony conviction will *absolutely* have a disparate impact on Black and Hispanic individuals.

13. Pursuant to its mission of ensuring equal access to housing for all, the FFH Alliance began investigating the "Palm Court" apartment community, located at 711 Forest Club Drive, Wellington, Florida 33414 (the "Complex"), for discriminatory housing practices.

14. Defendant is the owner and otherwise landlord of the Complex.

---

[1] Bureau of Justice Statistics, U.S. Dep't of Justice, *Prisoners in 2017*, 15 (April 2019), *available at* https://www.bjs.gov/content/pub/pdf/p17.pdf.

[2] U.S. Census Bureau, U.S. Dep't of Commerce, *Overview of Race and Hispanic Origin: 2010*, 6 (March 2011), **available at** https://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf.

[3] *Supra* at FN. 5.

15. On March 13, 2020, the FFH Alliance tested the Complex for unlawful discriminatory housing practices using a field tester.

16. The field tester used by the FFH Alliance to test the Complex ("Field Tester" or "FT") is a *sui juris* Hispanic male with a felony conviction.

17. On March 13, 2020, at approximately 12:58 p.m., FT called the Complex at phone number 561- 793-8500. After dialing this number FT was connected to an agent of Defendant, of whom identified herself as "Melissa." FT first asked whether rental property was available, to which Defendant responded, without hesitation, that property was available, *namely*, a two-bedroom apartment. FT then asked whether his (FT's) rental application would be denied due to FT's record felony conviction, to which Defendant retorted: "**yes, with a prior criminal felony they won't accept**."

18. Defendant's response to FT regarding convicted-felon applicants demonstrates that Defendant directs individuals convicted of a felony, *the majority of which are disproportionately Black and Hispanic*, away from both the Dwelling and the Complex.

19. Defendant did not perform any investigation or inquiry into the felony conviction had by FT. For example, Defendant did not inquire into the type of felony, the date of conviction, the nature of the conviction, let alone the circumstances surrounding the felony conviction had by FT. Defendant simply identified FT as an individual with a felony conviction, and without any inquiry or investigation, chose to deter FT from renting the property Defendant held open to the public due to FT's record felony conviction.

20. The statements made by Defendant to FT regarding applicants previously convicted of a felony serves to discourage Black and Hispanic individuals with a criminal record from

PAGE | **5** of **11**

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

applying, inspecting, and renting the Dwelling, and otherwise restricts the choices of these individuals in connection with attempts to seek, negotiate for, and ultimately rent the Dwelling.

21. Consistent with the FFH Alliance's suspicions, *that is*, until such suspicion was *confirmed* on March 13, 2020, Defendant, whether intentionally or ignorantly, perpetuates segregated housing patterns and discourages and/or obstructs choices in the applicable community, neighborhood, and/or development.

22. Simply put, Defendant's decision to steer individuals convicted of *any* felony away from the Complex and/or Dwelling, *i.e.*, **to flat out tell FT that individuals convicted of a felony are not accepted,** all without conducting even the most minimal inquiry into such an individual's circumstances, has a disparate impact on Black and Hispanic individuals.

23. The harm inflicted by discriminatory practices and/or policies directed at individuals with criminal records, like those of Defendant, is significant, not only in terms of the sheer number of people affected, but also in terms of the consequences for the wellbeing of our communities. In fact, securing safe and affordable housing is a particularly crucial need for individuals reentering their communities immediately after time in prison.

24. Research shows that success in finding adequate housing is critically important to allowing reentrants to secure employment, government benefits, and other community ties. Housing has been characterized, properly, as the "lynchpin that holds the reintegration process together."[4]

---

[4] Jeremy Travis, *But They All Come Back: Facing Challenges of Prisoner Reentry* 219 (2005).

25. As another expert put it, "[t]he search for permanent, sustainable housing portends success or failure for the entire reintegration process."[5]

26. On April 4, 2016, more than four years ago, the U.S. Department of Housing and Urban Development ("HUD") issued a document titled "*Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions*" (the "HUD Guidance").

27. The HUD Guidance noted that "criminal history-based restrictions on access to housing are likely disproportionately to burden African Americans and Hispanics." Id. HUD found that "where a policy or practice that restricts access to housing on the basis of criminal background has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider." *See* HUD Guidance.

28. Ultimately, HUD concluded that "**a discriminatory effect resulting from a policy or practice that denies housing to anyone with a prior arrest or any kind of criminal conviction cannot be justified, and therefore such a practice would violate the Fair Housing Act**." Id. (emphasis added).

29. Further, HUD made clear that no substantial, legitimate, nondiscriminatory interest can be served where "[a] housing provider … imposes a blanket prohibition on any person with any conviction record – no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then." Id. The FFH Alliance finds the same.

---

[5] Barbara H. Zaitzow, *We've Come a Long Way, Baby…Or Have We? Challenges and Opportunities for Incarcerated Women to Overcome Reentry Barriers* 233 (in Global Perspectives on Re-Entry (2011)).

30. According to recent data, studies, and HUD findings, Hispanic and Black people are arrested, convicted, and imprisoned at vastly disproportionate in country as a whole, of which is consistent within the State of Florida. As such, the discriminatory steering practices of Defendant, those the above-transcribed interaction between Defendant and FT exemplifies, actually and predictably results in a disparate impact to Hispanic and Black people.

31. Defendant's practice or otherwise policy regarding the criminal history of individuals seeking to rent, utilize, or otherwise occupy the Dwelling is unlawful under the Fair Housing Act, as it has a disparate impact on Black and Hispanic individuals and otherwise fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

32. Defendant's acts impaired the FFH Alliance's ability to engage in projects by forcing the FFH Alliance to devote resources to counteract the herein complained of actions of Defendant. Further, the resources diverted are independent of the cost of detecting and challenging, *via* non-legal means, the alleged misconduct of Defendant. Simply put, the FFH Alliance was forced to divert resources from, *among other things,* its counseling, outreach, and educational efforts, and into the advancement of this litigation to protect the FFH Alliance's core mission.

33. Despite the prelitigation efforts of the FFH Alliance, Defendant refuses to evaluate and revise the role that criminal records, or more pointedly, the mere suspicion of a felony conviction, play in Defendant's screening policies and practices to ensure that Defendant is not perpetuating segregation and otherwise needlessly erecting barriers to housing.

34. Consistent with FFH Alliance's fair housing testing efforts, FFH Alliance has a practice of continuing to monitor and test those entities and individuals found to have been engaged in discriminatory housing practices. FFH Alliance's will continue monitoring Defendant, and its agents, in order to determine its (Defendant's) ongoing compliance with the Fair Housing Act.

PAGE | **8** of **11**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

## *COUNT I.*
## <u>VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. § 3604(d)</u>

35. Plaintiff, the FFH Alliance, incorporates by reference paragraphs 1-34 of this Complaint as though fully stated herein.

36. Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant and the agents of Defendant.

37. Defendant authorized its agents to act for it (Defendant) when Defendant's agents committed the Fair Housing Act violations alleged herein. The agents of Defendant accepted the undertaking of acting on behalf of Defendant when they (Defendant's agents) committed the Fair Housing Act violations alleged herein. Defendant had control over its (Defendant's) agents when said agents committed the Fair Housing Act violations alleged herein.

38. Here, Defendant's practice of, without any review or investigation, turning away individuals with a felony criminal record is an arbitrary and artificial barrier to housing, the likes of which is unnecessary to achieve a valid interest or legitimate objective. Further, a robust causal link exists between Defendant's discussed practices and the disparate impact on Black and Hispanic people, as Black and Hispanic individuals are disproportionally more likely to have been convicted of a felony than that of white individuals. Defendant's practice of denying, or otherwise without any review or investigation, turning away prospective individual it merely *thinks* was previously convicted of a felony has a direct, disproportionate discriminatory effect on Black and Hispanic individuals.

39. Defendant has violated the Fair Housing Act by, *inter alia*, making unavailable and/or otherwise denying the Dwelling to individuals on the basis of race and/or criminal record.

40. FFH Alliance has been aggrieved, harmed, and its (the FFH Alliance's) goal otherwise thwarted, by above-exemplified latent discriminatory hurdle Defendant perpetuates – of

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

which Defendant continues to practice despite such practices being explicitly condemned by HUD. *See* HUD Guidance (wherein HUD concluded that "a discriminatory effect resulting from a policy or practice that denies housing to anyone with a prior arrest or any kind of criminal conviction cannot be justified, and therefore such a practice would violate the Fair Housing Act.").

41. The FFH Alliance, having uncovered Defendant's latent discriminatory practice and/or policy – has suffered damages in light of the FFH Alliance's goals, purpose, and ongoing monitoring efforts. Further, due to Defendant's conduct, the FFH Alliance's has suffered, is continuing to suffer, and will in the future suffer, irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

42. WHEREFORE, Plaintiff FFH Alliance, respectfully, requests that this Court:

   (a) Declare the above-mentioned actions, practices, omissions, polices, and procedures, of Defendant to be in violation of the Fair Housing Act;

   (b) Award damages to Plaintiff against Defendant;

   (c) Enter a permanent injunction enjoining Defendant from using the steering practices complained of herein;

   (d) Enter a permanent injunction compelling Defendant to amend its (Defendant's) polices, Procedures, and practices, that have a disparaging impact on Black and Hispanic individuals;

   (e) Award Plaintiff costs and reasonable attorneys' fees; and

   (f) Any other relief that this Court deems appropriate and just under the circumstances.

DATED: June 30, 2020

                                                      Respectfully Submitted,

                                                      /s/ Thomas Patti
                                                   **JIBRAEL S. HINDI, ESQ.**
                                                   Florida Bar No.: 118259
                                                 E-mail:   jibrael@jibraellaw.com
                                                 **THOMAS J. PATTI, ESQ.**
                                                 Florida Bar No.: 118377
                                               E-mail:   tom@jibraellaw.com
                                               The Law Offices of Jibrael S. Hindi
                                             110 SE 6th Street, Suite 1744
                                             Fort Lauderdale, Florida 33301
                                           Phone:    954-907-1136
                                           Fax:       855-529-9540

                                          *COUNSEL FOR PLAINTIFF*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 30, 2020, the forgoing was electronically via the Court's CM/ECF system on all counsel of record.

                                                   /s/ Thomas J. Patti
                                                 **THOMAS J. PATTI, ESQ.**
                                                 Florida Bar No.: 118377

PAGE | **11** of **11**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com