# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21994-KMW

**FLORIDA FAIR HOUSING ALLIANCE, INC**.

    Plaintiff

vs.

**TOP WELL, LLC**,
*d/b/a* **PALM COURT APARTMENTS AT WELLINGTON**,

    Defendant.
_____/

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Florida Fair Housing Alliance, Inc. ("Plaintiff") submits this Response in Opposition to Defendant Top Well, LLC *doing business as* Palm Court Apartments at Wellington's ("Defendant") Motion to Dismiss (D.E. 16).

## POSTURE AND BACKGROUND

1. Plaintiff seeks to dissolve the arbitrary barriers to housing that Defendant, as the owner of an apartment complex has created for Black and Hispanic individuals. In the words of Melissa, Defendant's agent, "yes, with a prior criminal felony [Defendant] won't accept you." Black and Hispanic individuals are disproportionately more likely to be convicted of a felony in comparison to White individuals. Regardless of intent, Defendant's *facially neural* practice and policy of **steering away** any and all *suspected* felons *and* **automatically rejecting** any and all *convicted* felons, both **without any investigation or consideration whatsoever**, has a disparate impact on Black and Hispanic individuals.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

2. On June 30, 2020, Plaintiff filed the operative pleadings, *to wit*, Plaintiff's First Amended Complaint [D.E. 11] (the "FAC"), wherein Plaintiff claims Defendant violated the Fair Housing Act (the "FHA") under a theory of disparate impact. *See* FAC at ¶ 35 (wherein Plaintiff advances a single claim against Defendant for violating § 3604(d) of the FHA).

3. The events precipitating the above-captioned action arise, in part, from the test Plaintiff conducted, *via* Plaintiff's Field Tester ("FT"), of Defendant on March 13, 2020, due to suspicion that Defendant *was not* affording equal housing opportunities to all. FAC at ¶¶ 13, 15. Pointedly, at 12:58 p.m. on March 13, 2020, FT called Defendant and, after being connected to an agent of Defendant that identified herself as "Melissa," FT was able to confirm that Defendant had a policy and/or practice of automatically rejecting, and/or otherwise steering away, *any* individual with *any* felony conviction. FAC at ¶ 17.

4. As made clear in the FAC, Defendant's response to FT regarding convicted-felon applicants (*i.e.*, *"***yes***,* **with a prior criminal felony** [Defendant] **won't accept you***,"* *see* FAC at ¶ 17) demonstrates that Defendant directs individuals convicted of *any* felony, the majority of which are disproportionately Black and Hispanic, away from the underlying property *and* otherwise automatically rejects *all* applicants with *any* felony conviction – again, the majority of which are disproportionately Black and Hispanic – without any consideration whatsoever. *See* FAC at 17.

5. In support of Plaintiff's disparate impact claim, Plaintiff dually offered statistical data showing exactly *why* Defendant's screening methods resulted in a disparate impact on Black and Hispanic individuals. FAC at ¶¶ 9-10 (showing that Black and Hispanic individuals are disproportionately more likely to be convicted of a felony in comparison to White individuals, and as a result, Defendant's needless refusal to consider applicants it (Defendant) merely suspects to have been convicted of a felony has a disparate impact on Black and Hispanic individuals).

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

6. On July 21, 2020, Defendant filed the Motion to Dismiss [D.E. 16] now before this Court (the "Motion" or "Defendant's Motion").

### DEFENDANT'S MOTION TO DISMISS

7. The unconventional form and articulation of the Motion, as a whole, is perceived as claiming Plaintiff failed to state a claim, or more specifically, plead a *prima facie* case of disparate impact under the FHA. To this end, although nebulous, if given a generous reading, the specter of three theories emerge from Defendant's Motion: **[ 1 ]** the FAC should be dismissed because "[P]laintiff does not allege [FT] told [Defendant] [FT's] name or that [FT] was Hispanic" ("**Theory-1**"), *see* Id. at ¶ 8; **[ 2 ]** the FAC should be dismissed because "Plaintiff has not plead, or event attempted to plead that the challenged practice caused, or predictably will cause a discriminatory effect" ("**Theory-2**"), *see* Id. at ¶ 23; *and* **[ 3 ]** the FAC should be dismissed because Plaintiff failed to state a claim under Inclusive Communities[1] ("**Theory-3**"), Motion at ¶ 24.

### STANDARD OF REVIEW

8. When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court views the allegations as true and considers them in the light most favorable to the plaintiff. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010). The court applies a "plausibility standard" that is guided by "two working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, the court accepts all factual allegations in the complaint as true, except for legal conclusions. Id. Second, the complaint only has to state a plausible claim for relief. Id. at 679.

9. A complaint does not need detailed factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If it sets forth the grounds for entitlement by more than mere labels,

---

[1] Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507 (2015).

conclusions, and a formulaic recitation of the elements of the cause of action, it will survive a motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679 (*citing* Twombly, 550 U.S. at 556).

10. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is remote and unlikely." Twombly, 550 U.S. at 556; *see also* Iqbal, 556 U.S. at 678-79 (issue in resolving such a motion is not whether non-movant will prevail but whether he is entitled to offer evidence in support of his claims).

### **THEORY-1 FAILS**

11. Defendant claims the FAC should be dismissed because "[P]laintiff does not allege [FT] told [Defendant] [FT's] name or that [FT] was Hispanic. Motion at ¶ 8. This argument is without merit and illustrates that Defendant does not understand Plaintiff's claim.

12. The relevancy of disclosing race, in a case very similar to this one, was addressed with specificity recently by the Middle District of Florida in Chambers v. Empire Network Realty, Inc., 2020 U.S. Dist. LEXIS 73064 (M.D. Fla. Apr. 27, 2020. In Chambers the court, in light of the arguments advanced by the involved defendant,[2] noted that "[d]efendant misunderstands [p]laintiff's claim," further stating, that "[d]efendant's arguments *may apply* if [p]laintiff was bringing a **disparate treatment claim**, but [plaintiff] is not. **Plaintiff is bringing only a disparate impact claim**." Chambers, 2020 U.S. Dist. LEXIS 73064 at *5-6 (emphasis added); *see also* Id.

---

[2] The Chambers court noted the defendant as arguing that **[ 1 ]** "the listing agent did not know that [the plaintiff] was black, and therefore, [the defendant] could not have discriminated against [the plaintiff] based on his race," and **[ 2 ]** "the only information [the defendant] allegedly knew about [the plaintiff] was that he had a criminal history, and because the FHA does not prohibit discrimination based on criminal history, [the defendant] cannot be held liable for discrimination under the facts alleged." Chambers, 2020 U.S. Dist. LEXIS 73064 at *5-6.

at *5 (codifying that "a disparate impact claim challenges facially non-discriminatory 'practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'" (*citing* Inclusive Communities at 2513)).

### **THEORY-2 FAILS**

Defendant claims the FAC should be dismissed because "Plaintiff has not plead, or event attempted to plead that the challenged practice caused, or predictably will cause a discriminatory effect." Motion at ¶ 23. Defendant is wrong.

13. As a preliminary matter, Plaintiff wants to make clear, Inclusive Communities (discussed in more detail below) *does not* make the provision of statistical evidence a necessary component of a *prima facie* case of disparate impact. *See, e.g.,* Corelogic Rental Prop. Sols., LLC, 369 F. Supp. 3d 362, 379 (D. Conn. 2019) (rejecting the defendant's argument that the plaintiffs' "disparate impact claim fails because it is not supported by statistical evidence," and doing so, recognizing that, although statistical evidence "**is not required**," the plaintiffs had offered "statistical support for their claims." (emphasis added)). In fact, the Supreme Court in Inclusive Communities cautions against the use of *statistical evidence*. *See* Inclusive Communities at 2522 ("[b]ut disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, **for instance**, *if such liability were imposed based solely on a showing of a statistical disparity*." (emphasis added)).

14. With that said, Plaintiff is not claiming statistical information is unhelpful or useless in the context of a disparate impact claim. To the contrary, in the vein of utility, and although Inclusive Communities *does not* make the provision of statistical evidence a *necessary* component of a *prima facie* case of disparate impact, Plaintiff has clearly offered statistical information to crystalize *why* Defendant's decision to steer away and otherwise automatically reject convicted

felons away from its property has a disparate impact of Black and Hispanic individuals. *See* FAC at ¶¶ 11-12.

16. 15. In this light, we now look to Defendant's claim that "Plaintiff has not plead, or event attempted to plead that the challenged practice caused, or predictably will cause a discriminatory effect." As the above objectively illustrates, Defendant is simply wrong and otherwise ignores the contents of the pleadings. *See* FAC at ¶¶ 11-12 (wherein Plaintiff offers statistical data showing that Black and Hispanic individuals are disproportionately more likely to be convicted of a felony in comparison to White individuals, and as a result, Defendant's facially neural practice and policy of steering away any and all suspected felons and automatically rejecting any and all convicted felons, both without any investigation or consideration whatsoever, has a disparate impact on Black and Hispanic individuals).

## **THEORY-3 FAILS**

16. Defendant claims the FAC should be dismissed because Plaintiff failed to state a claim under Inclusive Communities. Defendant is wrong, as Plaintiff's pleadings squarely adhere to both the pleading standard the Supreme Court set in Inclusive Communities, and for that matter, Plaintiff's claims represents the *heartland* of disparate impact liability and warrant prompt resolution. *See* Inclusive Communities at 2523 ("Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important.").

### INCLUSIVE COMMUNITIES

17. Inclusive Communities represents the Supreme Court's codification of disparate impact liability under the FHA. 135 S. Ct. 2507 at 2525 ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act upon considering its results-oriented language,

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

the Court's interpretation of similar language in Title VII and the ADEA, Congress' ratification of disparate-impact claims in 1988 against the backdrop of the unanimous view of nine Courts of Appeals, and the statutory purpose."). With that said, the Supreme Court made clear that "[a] plaintiff who fails to *allege facts at the pleading stage* **or** *produce statistical evidence* demonstrating a causal connection cannot make out a prima facie case of disparate impact." Inclusive Communities, 135 S. Ct. 2507 at 2524; Id. at 2524 (exemplifying that a plaintiff must demonstrate, whether *via* **allegations** *or* **statistical evidence**, a "causal connection" between the specific adverse racial or ethnic disparity and the challenged policy).

18. With respect to the underlying facts, however, Inclusive Communities *does not* exemplify the "heartland" disparate impact claims. 135 S. Ct. 2507 at 2525 (wherein the Supreme Court made clear, "**[u]nlike the heartland of disparate-impact suits targeting artificial barriers to housing**, the underlying dispute in this case involves a novel theory of liability." (emphasis added)). In the court's own words regarding the case, "[t]his case, on remand, can be seen simply as an attempt to second-guess which of two reasonable approaches a housing authority should follow in the sound exercise of its discretion in allocating tax credits for low-income housing." (emphasis added)). Inclusive Communities, 135 S. Ct. 2507 at 2525. Put differently, the facts of Inclusive Communities have limited overlap with the facts of a "heartland" disparate impact claim, such as that advanced here by Plaintiff.

19. Nevertheless, despite the ill-suited factual circumstances of Inclusive Communities, the Supreme Court presented a directive to the lower courts, stating that "[r]emedial orders in disparate-impact cases should concentrate on the elimination of the offending practice that 'arbitrar[ily]… operate[s] invidiously to discriminate on the basis of rac[e],' [*quoting* Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)], and [i]f additional measures are adopted, courts

should strive to design them to eliminate racial disparities through race-neutral means." Inclusive Communities at 2524.

20. Turning to the Motion, Defendant claims:

> Under Inclusive Communities, therefore, a prima facie case of disparate impact discrimination will fail unless it demonstrates both relevant statistical disparity (evidence comparing members of the protected class affected by the challenged policy with non- members affected by the challenged policy), and also a plausible showing of "robust causality" between the challenged policy and that statistical disparity. Inclusive Communities at 2522-252. Succinctly, a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Id.; *see also* Oviedo Town Center 11, L.L.L.P. v. City of Oviedo, Florida, 759 Fed.Appx. 828 (l Cir. 2018) (granting defendants' 12(b)(6) motion to dismiss complaint discrimination under the Fair Housing Act).

Motion at ¶ 24. Contrary to Defendant's reading of the FAC, the FAC satisfies such requirements. *See* FAC at ¶¶ 11-12.

21. In the context of the "robust causality requirement" imposed by the Supreme Court in Inclusive Communities, the Oviedo[3] court observed that, "[a]lthough [the Supreme Court] left space for the lower courts to elaborate on what could meet this causality requirement, the Court was crystal clear that some allegations would fall far short: 'a plaintiff who fails to allege **facts at the pleading stage *or* produce statistical evidence** demonstrating a causal connection cannot make out a prima facie case of disparate impact.'" Oviedo at 834 (emphasis added) (*citing* Inclusive Communities at 2523). More pointedly, the Oviedo court stated:

> Even before the Supreme Court spoke to this question, this Court had arrived at similar conclusions, entirely consistent with Inclusive Communities, about the need for a relevant statistical showing in order to support a disparate-impact claim under the FHA, in [and Schwartz [4]]. There, the plaintiff, who operated halfway houses for recovering

---

[3] Oviedo Town Ctr. II, L.L.L.P. v. Ciy of Oviedo, 759 F. App'x 828 (11th Cir. 2018).
[4] Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008).

Case 1:20-cv-21994-KMW   Document 23   Entered on FLSD Docket 08/07/2020   Page 9 of 12

> substance abusers in the City of Treasure Island, Florida, had been cited by the City for violating a zoning ordinance that limited occupancy turnover. Id. at 1205. He sued the city under the FHA, alleging, among other things, that the zoning ordinance had a disparate impact on the rights of the disabled (the recovering substance abusers). Id. **The claim failed because the plaintiff provided no comparative data to support his prima facie case**. Id. at 1217-18. We held that in order to show disparate impact, **the plaintiff must provide evidence comparing members of the protected class affected by the ordinance with non-members affected by the ordinance**. See Id. at 1217. If the percentage of members of the protected class (recovering substance abusers) affected was higher than the percentage of nonmembers impacted, **this disproportionality could form the basis for a prima facie case of disparate impact**. The plaintiff in Schwarz had failed to provide an adequate statistical foundation because he presented "no comparative data at all," but instead simply offered what we termed a "bald assumption" that the ordinance's effect on his houses meant that the handicapped had necessarily been disparately impacted. Id. at 1218.

Oviedo at 834-35.

22. The "comparative data" identified and discussed in Oviedo and Schwartz *does not* nullify the validity of the comparative information and data proffered in the FAC. *See* FAC at ¶¶ 11-12 (wherein Plaintiff offers statistical data showing that Black and Hispanic individuals are disproportionately more likely to be convicted of a felony in comparison to White individuals, and as a result, Defendant's facially neural practice and policy of steering away any and all suspected felons and automatically rejecting any and all convicted felons, both without any investigation or consideration whatsoever, has a disparate impact on Black and Hispanic individuals). Instead, Oviedo exemplifies the threshold as the proffering of "evidence comparing members of the protected class affected by the [alleged discriminatory practice] with non-members affected by the [alleged discriminatory practice]. Oviedo at 835.

23. In simplest terms, "robust causality" is not a limitation on the *means* of establishing a *prima facie* case – rather – it is the causality threshold that "protects defendants from being held liable for racial disparities they did not create." Inclusive Communities at 2523. As the FAC makes

PAGE | **9** of **12**
LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

clear, Plaintiff brought "this action **not** to hold Defendant accountable for the disproportionate conviction of Black and Hispanic individuals, **but rather**, to remove the artificial barriers to housing created by Defendant that disproportionately and unjustly deny housing to Black and Hispanic individuals." FAC at 1.

24. Just as the plaintiff Corelogic, *see* 369 F. Supp. 3d 362 at 379, **although not required**, Plaintiff has alleged sufficient statistical support showing *why* Defendant's facially neural practice and policy of steering away any and all suspected felons *and* automatically rejecting any and all convicted felons, **both without any investigation or consideration whatsoever**, has a disparate impact on Black and Hispanic individuals. As alleged in the FAC:

> [A]ccording to the Bureau of Justice Statistics: 30% are White, 33% are Black, and 25% are Hispanic. In comparison to the demographics of the United States population (the total of which is estimated at 308 million), however, according to the U.S. Census Bureau: 63% of the population is White, 13% of the population is Black, 16% of the population is Hispanic.
> Despite making up a fractional percentage of the United States population in comparison to whites, Hispanic individuals, for example, are three times more likely to be convicted and incarcerated than that of white individuals. [citation omitted] Thus, in simplest terms, a policy, procedure, or practice that arbitrarily denies, without any consideration, housing to individuals with a felony conviction will absolutely have a disparate impact on Black and Hispanic individuals.

*See* FAC at ¶¶ 9-10 (citations omitted).

25. Simply put, Plaintiff has, by and through the FAC, plead a *prima facie* case of disparate impact. *See* Jackson v. Tryon Park Apartments, Inc., 2019 U.S. Dist. LEXIS 12473, at *7 (W.D.N.Y. Jan. 25, 2019) (denying motion to dismiss, concluding that "Plaintiff's Amended Complaint sufficiently alleges a disparate impact claim under the FHA. Plaintiff alleges that Defendants have an outwardly neutral practice, *i.e.*, 'automatically excluding a person with a felony conviction from living and renting at Defendants' apartment complex.' Plaintiff also alleges

PAGE | **10** of **12**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

that 'the policies and practices of Defendants have a disparate impact on applicants for housing, on the basis of race and color,' because 'empirical evidence shows that nationally, and in New York State, blanket bans on eligibility, based on criminal history, result in the denial of housing opportunities at a disproportionate rate for African Americans and minorities.' Because the statistical racial disparity that Plaintiff relies on is directly related to Defendants' policy of excluding a person with a felony conviction from renting at Defendants' property, Plaintiff has plausibly alleged a disparate impact claim under the FHA." (citations omitted); *see also* Sams v. GA W. Gate, LLC, 2017 U.S. Dist. LEXIS 13168, at *12-14 (S.D. Ga. Jan. 30, 2017) (denying motion to dismiss, concluding "that Plaintiffs have proffered sufficient evidence to survive a motion to dismiss. Plaintiffs have provided evidence that African Americans are twice as likely to have criminal convictions as are caucasians. Plaintiffs have also alleged that in 2014, African Americans represented 36% of the prison population in the United States but only 12% of the country's total population. As a result, Plaintiffs argue that Defendants' 99-year criminal history policy adversely affects African Americans because it adversely applies to Defendants' African American tenants. This is sufficient to avoid a motion to dismiss." (citations omitted)).

## CONCLUSION

Plaintiff has sufficient plead a *prima facie* case of disparate impact against Defendant under Fair Housing Act and, respectfully, Defendant's Motion to Dismiss (D.E. 16) should be denied without delay.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

PAGE | **11** of **12**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

DATED: August 7, 2020

                                      Respectfully Submitted,

                                      /s/ Thomas Patti  
                                    **JIBRAEL S. HINDI, ESQ.**  
                                    Florida Bar No.: 118259  
                                    E-mail:    jibrael@jibraellaw.com  
                                    **THOMAS J. PATTI, ESQ.**  
                                    Florida Bar No.: 118377  
                                    E-mail:    tom@jibraellaw.com  
                                    The Law Offices of Jibrael S. Hindi  
                                    110 SE 6th Street, Suite 1744  
                                    Fort Lauderdale, Florida 33301  
                                    Phone:      954-907-1136  
                                    Fax:           855-529-9540

                                    *COUNSEL FOR PLAINTIFF*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 7, 2020, the forgoing was electronically via the Court's CM/ECF system on all counsel of record.

                                      /s/ Thomas J. Patti  
                                    **THOMAS J. PATTI, ESQ.**  
                                    Florida Bar No.: 118377

PAGE | **12** of **12**

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com