IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21994-AHS

FLORIDA FAIR HOUSING ALLIANCE, INC.

      Plaintiff,

v.

TOP WELL. LLC *d/b/a/* PALM COURT APARTMENTS AT WELLINGTON

      Defendant.

_____

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Defendant, Top Well, Inc, (Top Well) by and through the undersigned attorney files this Reply to Plaintiff's Response to Motion to Dismiss and states:

### INTRODUCTION

1) Plaintiff's (Response) is based upon Plaintiff's two-part fact pattern.

   a. Plaintiff is a fair housing organization agency that "due to suspicions" (Paragraph 3) had its "Field Tester" make one phone call conduct an investigation.

1

    b. The "field tester" made a single cold call to phone number 561-793-8500 was connected to someone he claims to be an agent of the Defendant who identified herself as Melissa. Tester asked whether rental property was available, to which Defendant responded, without hesitation, that property was available, *namely*, a two-bedroom unit was available. Tester then asked whether his rental application would be denied due to ("FT's) record felony conviction, to which Defendant retorted: "yes, with a prior criminal felony they won't accept."

2. Based only upon those facts, Plaintiff advances a single claim against Defendant for violating § 3604(d) of the FHA by causing a disparate impact (Paragraph 2).

## ISSUES, RESPONSE AND REPLY

3. The issues raised by Defendant in its 12(b)(6) motion and the Plaintiff's responses and the Defendants replies to the issues are:

    a. Although Plaintiff has alleged some national statistical data, none was for Palm Beach County. (MTD p, 11)

        i. (Response, p, 5, 13, 14 and 15) Plaintiff offers a circular argument that says that statistical evidence is not necessary and that the Supreme Court in *Inclusive Cmtys. Project, Inc*.135 S. Ct. 2507, Cautions against using statistical evidence.

            1. Reply - The reason for the caution is that people will try to us it exactly as Plaintiff is trying to use it in this case. The HUD guidance of April 4, 2016[1] (HUD Guidance) states in Section 3 A paragraph 2:

---

[1] Office of General Counsel Guidance on Application of Fair Housing Standards to Use of Criminal Records …

2

> "Whether national or local statistical evidence should be used to evaluate a discriminatory effects claim at the first step of the analysis depends on the nature of the claim alleged and the fact of the case. Where state and local statistics should be presented where available and appropriate based on a housing providers market area …
>
> In this case there is complex in Wellington Florida and there is no claim that it solicits outside its area.

   b. Plaintiff is not a Fair Housing organization but is actually a litigation mill. (MTD p, 12 & 16).

      i. Plaintiff did not respond to this statement.

         1. Reply – Plaintiff, in its first amended complaint, relies upon HUD Guidance to bolster its claim. However, HUD's guidebook[2] Chapter 7 is a 51-page outline on "Planning and Conducting an investigation". Plaintiff, made one phone call failed to comply with any of the other requirements necessary to comply with the guidelines necessary for an investigation.

   c. Plaintiff failed to plead the damages with the specificity as required by *Havens Realty Corp. v Coleman* 455 U.S. 363, 379 (1982) (MTD p, 14), instead it recited the claims used by HOMES in *Havens* "petitioners steering practices have perceptibly impaired HOME's ability to provide counseling and referral services …"

      i. Response – None

         1. Reply – Although there was no response, Defendant has received new evidence in relation to this matter. Defendant filed an Exhibit 1 (Doc

---

[2] HUD Handbook No, 8024.1, Rev-2 issued May 11, 2005

3

19) Plaintiff incorporation papers from February 22, 2020 where the purpose was declared to be a charity. The new evidence, attached as exhibit "1" is Plaintiff **Certified** application with to the Florida Department of Agriculture and Consumer Services on July 1, 2020. Plaintiffs to become a charitable business, a document that must be filed before a charity can solicit funds in Florida. According to that document, page 3 of 4, the company has had no revenue and no expenses. Further, the document, page 1, states that it is an *application*. On page 4 the application states that the information is provided for the purpose of complying with Chapter 496 of the Florida Statutes. If the Plaintiff has no revenue and no expenses, how did Defendant, in March when this complaint was filed, cause Plaintiff to (Amended complaint Paragraph 32) impair FFH Alliance's ability to engage in projects by forcing the FFH Alliance to devote resources to counteract the herein complained of actions of Defendant. How did Plaintiff divert funds for the cost of detecting and challenging *via* non-legal means the misconduct of Defendant and how did the divert resources from counseling outreach and education? How are Plaintiff's goals thwarted when they had no funds to pursue them. What is the irreparable injury and threat of immediate threat by a complex 60 miles away from Plaintiff that is not doing any business in its neighborhood?

4

> *Heartland Surgical Specialty Hosp., v Midwest Div., Inc.* 2007 U.S. Dist. LEXIS 220090 U.S. Dist. Ct Kan (Mar 2007) Until the business is operating it cannot suffer damages "Moreover, once it was legally formed, Heartland did not immediately enter the market. It first sought to solicit additional investors by means of a prospectus" … "none of those activities could have affected Heartland until *after* it began soliciting investors in early 2000.
>
> Florida Statute 496.406 Plaintiff could not have started soliciting prior to its application, therefore it could not have suffered any financial damages. Further this fact pattern does not support the damages claim.
>
> *Spann v Colonial Village, Inc.* 899 F.2d 24 (U.S. Ct of App DC March 1990 An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were we to Rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation.

d. Plaintiff failed to allege any more than threadbare conclusory statements that Defendant claimed actions did not serve a substantial, legitimate, nondiscriminatory interest of the housing provider. (MTD p, 17)

   1. Response, Plaintiff claims that they have made a claim for disparate impact sufficient to get past a 12(b)(6) motion so it never addressed this issue with the bald assertion that there is racial disparity at the complex and statistically more blacks and Hispanics have felony conviction than whites so there must be disparity.

      a. Reply – Although Plaintiff makes the statement, based upon the one phone call the allegations are without sufficient factual matter to be accepted as true or even plausible.

5

e. That the Plaintiff failed to establish that the Defendants claimed actions were a Policy of Practice. (MTO p, P17, 18a).

   i. Plaintiff's response did not address this issue.

      1. Defendant relies on its pleadings in the 12(b)(6).

f. That the Plaintiff failed to establish that the Defendants claimed actions had a disparate impact on individuals of a particular race. (MTO p, P17, 18b)

   1. Response "Defendant is wrong". Response between Paragraph 12 and 13. Paragraph 15, Plaintiff again discusses the fact that statistically Blacks and Hispanics have a higher felony conviction rate so the complex must have a disparate impact.

   2. Reply - Although Plaintiff makes the bald assertion that there is racial disparity at the complex. This statement is does not provide the court with sufficient factual matter to support this allegation. Further, based upon the failure of Plaintiff to perform an investigation the Plaintiff has no knowledge of any disparity at the complex. Plaintiff is requiring the court to assume it exists.

g. Defendant cited *Carson v Hernandez:* 2018 U.S. Dist. Lexis 185782 (July 26, 2018) citing *Inclusive Cmtys. Project, Inc*.135 S. Ct. 2507. In its 12(b)(6) motion which states:

In *Inclusive Communities,* the court held: "[A] disparate impact claim that relies on a statistical disparity must fail if the Plaintiff cannot point to a defendant's policy or policies causing the disparity. A robust causality requirement ensures that [r]acial imbalance does not, without more, establish a prima facie case of disparate impact" and thus protects the defendant from being held liable for racial disparities the did not create. *Id.* At 2523 (quoted case omitted) Accordingly. "[A] plaintiff who fails to allege

6

facts at the pleading state or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id* at 2523.

**In the case *sub Judice*. Plaintiff has not identified any specific policy or practice of defendants that <u>caused</u> a disparate impact on a protected group. He avers only generally that the "practice and policy" to deny housing from those released from prison and cites purported disparate impact on African Americans based on statistical data. Doc. 3 at 2; 7 at 2-3. Assuming *arguendo*, that Defendants had a policy of rejecting applicants with felony convictions, regardless of the age of the convictions, Plaintiff has wholly failed to demonstrate a "robust causal connection between the alleged policy or practice and the perceived adverse discriminatory effect. *Inclusive Cttys.*, 135 S. Ct. at 2513, Certainly a policy of excluding convicted felons for tenancy did not cause the underlying disparity. Plaintiff cites, to-wit, the historical disproportion of African Americans convicted of felony offences in the United States. Doc. 3 at 3. In any event, such a policy is not "otherwise unjustified by a legitimate rational" *Inclusive Cmtys,* 135 S. Ct. at 2513, as it is obviously pertinent to maintaining a crime-free environment.**

4. Instead of discussing *Carson*, Plaintiff relies on *Jackson v. Tryon Park Apartments* 2019 U.S. Dist. LEXIS 12473 at 7* (W.D.N.Y. Jan 25, 2019) without trying to distinguish the two. The Jackson case was a 12(b)(6) motion and the court, which did cite *Inclusive Communities,* did not address the issue of a substantial, legitimate, nondiscriminatory interest of the housing provider and based upon a reading of the decision it does not appear that it was raised. This would not be unusual because normally the burden of proof is on the Plaintiff to make a claim and then it shifts to the Defendant. However, in our case, because the Plaintiff's pleadings do not state a claim and all of the plaintiff's evidence has been plead, the court may take notice that Plaintiff's pleadings do not state a sufficient factual bases or plausible statements that there is no legitimate rational as required by the HUD Guidance, *Inclusive Communities* and *Carson.* Plaintiff is trying to put an elephant into a mousehole by claiming that the HUD Guidance and *Jackson v Tryon* make felons a protected class. This violate the major issues doctrine as will be discussed in the Memorandum of Law.

**MEMORANDUM OF LAW**

5. Plaintiff has brought this suit base upon a violation of 42 U.S.C. §3604 (d) with the claim that this is a disparate impact case. The factual allegations necessary to succeed in a claim for disparate impact are: 24 CFR § 100.500(c)(1) requires that the plaintiff, with respect to a claim brought under 42 U.S.C. 3613, has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect. The Plaintiff has simply stated that the Defendant has a policy of not allowing convicted felons to rent in the complex.

6. Pursuant to Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "We assess plausibility by 'draw[ing] on [our own] judicial experience and common sense.'" Haney, 837 F.3d at 924 (alterations in original) (quoting Iqbal, 556 U.S. at 679). "Further, we 'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" Id. (quoting Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010)). And "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 550 U.S. at 678 (quoting Bell Atl. Corp. v.Twombly, 550 U.S. 544, 555 (2007)).

7. The office of Fair Housing, HUD filed with the Federal Register its new Rules titled Preserving Community and Neighborhood Choices. In the new Rules it repealed the 2015 AFH and the 1994 AI requirements where they appear in the regulations. In so doing they discussed the broad principle has centered on an important concept in Administrative Law known as "**the major issues doctrine**." Under this doctrine, judges "presume that

    Congress does not delegate its authority to settle or amend major social and economic policy decisions." The reason is that a "major policy change should be made by the most democratically accountable process." If an "agency wants to exercise expansive regulatory authority over some major social or regulatory activity . . . an ambiguous grant of statutory authority is not enough." As the Supreme Court has put it, when it comes to delegating authority to federal agencies, Congress "does not one might say, hide elephants in mouseholes." Thus, the Court has held that a regulatory interpretation by an agency is "unreasonable" if it results in "an enormous and transformative expansion in . . . regulatory authority without clear congressional authorization." Indeed, "[w]hen an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy," the Supreme Court will "typically greet its announcement with a measure of skepticism." Rather, the Court expects that Congress will "speak clearly if it wishes to assign an agency decisions of vast economic and political significance."

8. Recently, in BOSTOCK v. CLAYTON COUNTY, GEORGIA CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT No. 17–1618. Argued October 8, 2019—Decided June 15, 2020* Cite as: 590 U. S. ____ (2020) The Supreme Court determined that an employer who intentionally fires an individual homosexual or transgender employee in part because of that individual's sex violates the law even if the employer is willing to subject all male and female homosexual or transgender employees to the same rule. Part of the analysis was that you cannot fail to discuss sex when trying to make the division between why there were different rules.

9. With Felons the court can discuss the differences between Convicted Felons, Persons convicted of any crime, persons charged with crimes, persons suspected of crimes all without discussing Race, Ethnicity, Gender etc.

Defendants Motion to Dismiss the under Rule 12(b)(6) should be Granted and Defendants Motion for Attorney's fees under 42 U.S.C.S. (c)(2) should be Granted.

Respectfully submitted on August 14, 2020.

Thomas F. Ryan P.A.

Is/ Thomas F Ryan
Florida Bar Number 293180
636 U.S. 1 Suite 110
North Palm Beach, Florida 33408
Phone 561 723 5725
Fax
Email ryantlaw@aol.com
Attorney for Top Well LLC

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF on this August 14, 2020, to all counsel or parties of record on the service list. Jibrael S. Hindi Esq. and Thomas J. Patti, The law offices of Jibrael S. Hindi PLLC, 110 S.E. 6th St, Suite 1744, Ft. Lauderdale, Florida 33301, jibrael@jibraellaw.com; and tom@jibraellaw.com. Counsel for the Florida Fair Housing Alliance.